UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARY GIBSON, :
:
    Plaintiff, :
:
v. : 3:04-CV-1759 (WWE)
:
MARTHA LORD, :
:
    Defendant. :

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action arises from plaintiff Mary Gibson's claim that defendant Martha Lord violated her rights pursuant to the United States Constitution and the laws of the State of Connecticut. Specifically, plaintiff asserts that defendant deprived plaintiff of equal protection as provided by the Fourteenth Amendment to the United States Constitution as enforced through Title 42 U.S.C. § § 1983 and 1988. Defendant moves for summary judgment on plaintiff's claims.

**BACKGROUND**

This civil rights action arises from plaintiff's claim that she was treated differently than other similarly situated individuals in the scope of her employment. Plaintiff, a social worker employed by the Connecticut Department of Correction ("DOC") at the York Correctional Institution ("York"), alleges that defendant, a personnel officer employed by the DOC at York, did not allow her to remain at work while she had a cast on her foot due to an injury received while off duty.

On April 28, 2004, while off duty, plaintiff fell and fractured her foot. As a result

1

of this injury, she had to wear a cast that covered most of her foot and a part of her leg.

The DOC has a written policy that prohibits employees from returning to work if they are wearing either hard casts or air casts or braces and, therefore, defendant informed plaintiff's supervisor that plaintiff could not return to work while she had the cast on her leg.  Subsequently, plaintiff requested and received medical leave for approximately four weeks, the duration in which she was required to wear the cast. She returned to work on or about May 28, 2004, after she had the cast removed.

Plaintiff posits that other employees were permitted to stay at work while they were wearing casts and/or braces and that, as a result of this disparate treatment, plaintiff's constitutional rights were violated.   Defendant argues that at all times, she was acting pursuant to established regulations set forth by the DOC and that she did not treat plaintiff any differently than other employees.  Therefore, defendant asserts, plaintiff's rights were not violated.  Even if there was a constitutional violation, however, defendant argues that she is entitled to qualified immunity.  The Court agrees with defendant.

## DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material

factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

If a nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which it has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 24.

In the present case, plaintiff claims that her rights under the Fourteenth Amendment have been violated in that she has been treated differently than others similarly situated and that DOC regulations have been selectively enforced in order to treat her thus.  She is not and does not claim to be a member of a protected class and, instead, asserts her equal protection claim pursuant to the theory of "class of one."  The United States Supreme Court has established that one may assert an equal protection claim as a class of one where "the plaintiff alleges that she has been intentionally treated differently from other similarly situated and that there is no rational basis for the difference in treatment."  Village of Willowbrook v. Olech, 528 U.S. 562, 564, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000).

"An equal protection claim which does not challenge the validity of a law, but challenges the selective enforcement of the law, is subject to a two-part test: 1) the plaintiff, compared with others similarly situated, must have been selectively treated;

and 2) the selective treatment must have been motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person." Manatuck Associates v. Wendt, 1997 WL 766858, *11 (D.Conn.). See also Crowley v. Courville, 76 F.3d 47, 52-53 (2d Cir. 1996). Defendant argues that plaintiff does not satisfy this test.

In order to satisfy the first prong of a selective treatment equal protection claim, plaintiff must present evidence that she was treated differently than others "similarly situated." "To be 'similarly situated,' the individuals with whom [plaintiff] attempts to compare herself must be similarly situated in all material respects" and have "engaged in comparable conduct." Shumway v. United Parcel Service, Inc., 118 F.3d 60, 64 (2d Cir. 1997). "In order to succeed on a 'class of one' claim, the level of similarity between plaintiffs and the persons with whom they compare themselves must be extremely high." Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005). The test of similarity in a "class of one" case is a showing that: "i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendant acted on the basis of a mistake." Id., at 105.

Here, plaintiff claims that she has been a victim of intentional and arbitrary discrimination in that DOC regulations were selectively enforced only against her. She compares herself to five other employees of the DOC who had to wear a cast, brace, or were otherwise impaired and were not required to take a leave of absence from their

4

jobs.  She attests that she had requested a light duty accommodation for her condition, but instead was told that, pursuant to DOC regulations, she could not come to work with a cast.  Consequently, in order to be paid for her time away from her job, plaintiff used all of her sick time and part of her allotted vacation time for the month that she was out.  Defendant counters that plaintiff's comparators do not meet the standard of similarity necessary to establish plaintiff's equal protection claim.  The Court agrees.

None of the five employees to whom plaintiff compares herself holds the same position as plaintiff, namely, social worker.  None is alleged to have the same injury as the plaintiff.  Ruth Bubar, a correctional counselor, did not have to wear a cast or brace to work.  Plaintiff admits she never saw Larry Harvison, a correctional treatment officer, with a cast or brace and there was nothing in his personnel or medical files indicating that such was required.  June Pelling, a correctional counselor, never needed a cast or a brace.  Her medical record indicates merely that she had been fitted with a closed shoe.  Plaintiff alleges that Karen Milkulka, another correctional counselor, has Multiple Sclerosis; there is no indication of this in her personnel or medical files, nor is there any evidence that she was ever required to wear a cast or a brace.  The medical and personnel files of Joan Aaronson, a secretary, reveal that she did not require any type of cast or brace.  Finally, only plaintiff's supervisor alerted defendant of plaintiff's condition and received specific instructions pursuant to DOC regulations.   Defendant was not aware of the alleged medical conditions of any of the comparators.

Furthermore, plaintiff presents nothing to support a claim that she was treated differently because of intentional discrimination.  The DOC policy in question exists merely to protect the staff and the inmates from the potential security issues that could

5

arise from an employee restrained by a cast or brace.  Plaintiff merely alleges that defendant properly followed such policy.  This is completely lacking any indicia of arbitrary or irrational action.

In the alternative, even if, arguendo, plaintiff could demonstrate disparate treatment and a violation of her equal protection rights, defendant would be entitled to qualified immunity and, therefore, summary judgment would be appropriate.

It is well established that government officials are entitled to qualified immunity for their discretionary actions performed during the course of their employment.

Qualified immunity shields government officials "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  The scope of qualified immunity is broad.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The test for qualified immunity is twofold and must be considered in sequence. The threshold question is whether, taken in the light most favorable to plaintiff, the facts demonstrate the official's violation of one of plaintiff's constitutional rights.  The next question is whether that constitutional right was clearly established within the specific context of the case.  In other words, the court must consider whether the constitutional right was clear enough so that a reasonable officer would understand that his actions would violate that right. Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).   Thus, "even assuming a state official violates a plaintiff's constitutional rights, the official is protected nonetheless if he objectively and

reasonably believed that he was acting lawfully." <u>Luna v. Pico</u>, 356 F.3d 481, 490 (2d Cir. 2004).

Here, by adhering to the DOC policy, defendant could not have known that her action would violate plaintiff's constitutional rights. Without knowledge of plaintiff's comparators' alleged impairments, there is no way defendant could have enforced the policy vis a vis those individuals. She objectively and reasonably believed that she was acting lawfully, as in fact she was. Thus, defendant is protected by qualified immunity. Summary judgment is therefore appropriate.

## CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [Doc. #14] is GRANTED.

Dated this 8th day of August, 2006 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge